Brian Trust
Lucy F. Kweskin
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
       LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| 14 East 52nd Street Devco LLC, | ) Case No. 1-23-41364 (ESS) |
| Debtor. | ) |

**NOTICE OF HEARING ON INMOPRISA'S MOTION FOR ENTRY OF AN ORDER PERMITTING INMOPRISA TO MARKET THE PROPERTY AND GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on May 5, 2023, Inmoprisa USA, Inc. ("Inmoprisa") filed its Motion for Entry of an Order Permitting Inmoprisa to Market the Property and Granting Related Relief (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion will be held on May 25, 2023 at 10:30 a.m. (prevailing Eastern Time) in the courtroom of the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East—Suite 1595, Brooklyn, NY 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that any oppositions to the Motion shall be filed and served upon (i) Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020,

Attn: Brian Trust (BTrust@mayerbrown.com) and Lucy F. Kweskin (LKweskin@mayerbrown.com) and (ii) the Office of the United States Trustee, Eastern District of New York (Brooklyn), Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, NY 10004-1408, Attn: Marylou Martin, with a copy delivered to the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East—Suite 1595, Brooklyn, NY 11201-1800 by May 18, 2023, and any reply in further support of the Motion shall be filed by May 22, 2023.

Dated:  May 5, 2023  **MAYER BROWN LLP**

/s/____*Lucy F. Kweskin*_____
Brian Trust
Lucy F. Kweskin
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
         LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*

Brian Trust
Lucy F. Kweskin
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
      LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 14 East 52nd Street Devco LLC, | Case No. 1-23-41364 (ESS) |
| Debtor. |  |

**MOTION FOR ENTRY OF AN ORDER PERMITTING INMOPRISA TO MARKET THE PROPERTY AND GRANTING RELATED RELIEF**

Inmoprisa USA, Inc. ("Inmoprisa"), a party in interest in the above captioned case, out of an abundance of caution and pursuant to section 362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), moves (the "Motion") this Court for entry of an order substantially in the form attached hereto as Exhibit A, modifying the automatic stay, to the extent necessary, to allow Inmoprisa to continue to market and enter into a contract with a third party to sell the property located at 14 East 52nd Street, New York, New York (the "Property") and granting other related relief. In support of this Motion, Inmoprisa respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor, as buyer, and Inmoprisa, as seller, are parties to that certain Contract of Sale, dated February 23, 2023 (the "Contract"), under which the Debtor agreed to purchase the Property for $22.5 million, with an agreement to close by April 10, 2023.[1]

2.      The Contract contains an express and specifically bargained for "time is of the essence" clause. The importance of this was repeatedly stressed throughout the parties' negotiations because Inmoprisa needs to sell the Property expeditiously to utilize the tax loss that will result from the sale and obtain the corresponding tax refunds, as well as to avoid incurring additional costs related to the Property. After the Debtor failed to timely close the transaction, Inmoprisa sent a default notice to the Debtor, thereby triggering a five (5) business day cure period. Only minutes before the expiration of the cure period, the Debtor filed a voluntary petition for relief in this Court to obtain a 60-day extension of the cure period under section 108(b) of the Bankruptcy Code (the "60-Day Period").

3.      This is not Inmoprisa's first dealings with the Debtor's business associates with respect to the Property, as Inmoprisa had previously entered into a contract with affiliates of Macklowe Properties for a sale of the Property, which as detailed further below, was never consummated due to a default by the buyer under that contract. Now facing exigent time constraints to sell the Property before it is too late to utilize the tax loss from the sale to obtain the corresponding tax refunds, Inmoprisa must be in a position to sell the Property by no later than the conclusion of the 60-Day Period – whether to the Debtor or to a back-up purchaser.

---

[1] Raciv Corp., an affiliate of Macklowe Properties, the prominent real estate development firm, was originally the purchaser under the Contact but assigned the Contract to the Debtor on April 8, 2023, two days before the scheduled closing. While the Debtor's petition was executed by Tim Ziss, the owner of Allied Properties LLC, upon information and belief, the Debtor is also affiliated with Macklowe Properties or at least there is a business relationship or understanding between the Debtor and Macklowe Properties. *See* Cedeño de Hoces Declaration at ¶ 11.

753444430

4. Out of an abundance of caution, Inmoprisa files this Motion confirming that it may (i) continue to market the Property to third-parties during the 60-Day Period, (ii) enter into a contract to sell the Property to a back-up purchaser if the 60-Day Period expires without the Debtor closing, with closing to a third-party to occur immediately upon the expiration of the 60-Day Period, and (iii) recover the Deposit (as defined below) posted under the Contract. Inmoprisa additionally requests that the Court deny any extension of the 60-Day Period to enable Inmoprisa to effectively market the Property and secure a back-up purchaser to finally consummate a sale.

### JURISDICTION AND VENUE

5. This Court has jurisdiction to hear and determine this matter under 28 U.S.C. §§157 and 1334.

6. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

7. Venue of the Debtor's Chapter 11 case and this Motion is proper in this district under 28 U.S.C. §§1408 and 1409.

8. The legal predicates for the relief requested herein are Bankruptcy Code section 362, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Local Bankruptcy Rules for the Eastern District of New York.

### BACKGROUND[2]

**A.   2018 Attempted Sale of the Property to Macklowe Properties.**

9. On May 8, 2018, Inmoprisa and 14 East 52 Owner LLC ("Owner LLC"), also an affiliate of Macklowe Properties, entered into a contract for the sale of the Property for a

---

[2] The facts contained in this section are set forth in the Declaration of Gloria Cedeño de Hoces (the "Cedeño de Hoces Declaration"), attached hereto as Exhibit B, and made a part hereof.

$45,000,000 purchase price with a $4,500,000 deposit ("2018 Contract"). *See* Cedeño de Hoces Declaration at ¶ 3.

10. Upon information and belief, Macklowe Properties owns the buildings adjacent to the Property and intends to use that real estate and the Property to construct a 100,000 square foot luxury mixed-used building called TowerFifth as shown on its website: www. Mackloweproperties.com/current-projects.html. *See* Cedeño de Hoces Declaration at ¶ 4.

11. The closing of the sale under the 2018 Contract had been scheduled for May 31, 2019, but was extended at the request of Owner LLC, to June 25, 2019. In preparation for closing, Inmoprisa terminated the lease with the lessee who had been occupying the Property. *See* Cedeño de Hoces Declaration at ¶ 5. After Owner LLC again failed to close the transaction, Inmoprisa sent a notice of default to Owner LLC on June 26, 2019. *See* Cedeño de Hoces Declaration at ¶ 5.

12. On June 26, 2019, Inmoprisa agreed to further extend the closing of the 2018 Contract to July 24, 2019, in exchange for Owner LLC reimbursing Inmoprisa for certain costs and expenses related to the Property from and after the date thereof until closing. Owner LLC delayed the closing again to July 25, 2019, and then to August 2, 2019. *See* Cedeño de Hoces Declaration at ¶ 6.

13. Again, Owner LLC failed to close the transaction, and on August 2, 2019, Inmoprisa agreed to further extend the closing deadline to January 24, 2020, in exchange for Owner LLC's increasing the deposit to $6,750,000 and reimbursing Inmoprisa for the related costs and expenses of upkeeping the Property. Upon Owner LLC's failure to close on January 24, 2020, Inmoprisa granted a further extension to July 31, 2020, in exchange for a further increase of the deposit to $9,000,000 and additional cost reimbursements. *See* Cedeño de Hoces Declaration at ¶ 7.

14. On June 11, 2020, Inmoprisa sent Owner LLC a final notice terminating the 2018 Contract based upon Owner LLC's failure to close the transaction over the prior two years. Inmoprisa retained the deposit as liquidated damages. *See* Cedeño de Hoces Declaration at ¶ 8.

**B.     Current Attempted Sale of the Property to Macklowe Properties through Raciv Corp. and the Contract Assignee/Debtor.**

15. In early 2023, Macklowe Properties, this time through its affiliate Raciv Corp., agreed again to purchase the Property. *See* Cedeño de Hoces Declaration at ¶ 9.

16. Pursuant to the Contract executed on February 23, 2023, Inmoprisa agreed to sell, and Raciv Corp. agreed to buy, the Property at a purchase price of $22,500,000. *See* Cedeño de Hoces Declaration at ¶ 10. Raciv Corp. paid a deposit in the amount of $3,000,000 (the "Deposit") to be held by John A. Goodman as escrowee (the "Escrow Agent") and applied in accordance with the Contract. *See* Cedeño de Hoces Declaration at ¶ 10.

17. On April 8, 2023, Raciv Corp. assigned and transferred to the Debtor (which, upon information and belief, also has a business relationship with Macklowe Properties) all of Raciv Corp.'s right, title and interest in and to the Contract (including but not limited to any contract deposit delivered in accordance with the Contract), and the Debtor agreed to perform any and all obligations of Raciv Corp. pursuant to the Contract. *See* Cedeño de Hoces Declaration at ¶ 11.

18. Closing under the Contract was required to occur on or about April 10, 2023. *See* Cedeño de Hoces Declaration at ¶ 12. Specifically, the Contract contains a provision stating that "[t]ime shall be of the essence with respect to the obligation of Buyer to purchase the [Property] on the Closing Date." *See* Cedeño de Hoces Declaration, Annex 1.

**C. Inmoprisa's Impending Tax Deadline.**

19. In order to utilize the tax loss that will result from the sale and obtain tax refunds, Inmoprisa must complete the sale of the Property before October 31, 2023. Inmoprisa's fiscal year

for tax purposes ends on October 31. *See* Cedeño de Hoces Declaration at ¶ 13. As a result of the deposit and other damages collected by Inmoprisa from Owner LLC under the 2018 Contract, Inmoprisa reported a capital gain of approximately $10,308,725 for the tax year ending October 31, 2020, and paid U.S. federal, New York State and New York City corporate income taxes on such gain for a total amount of approximately $2,779,707. *See* Cedeño de Hoces Declaration at ¶ 13. Based on the purchase price under the Contract, Inmoprisa would recognize a capital loss of approximately $12,227,212 on the sale of the Property. *See* Cedeño de Hoces Declaration at ¶ 13. Given market conditions, Inmoprisa would likely recognize a loss of similar quantum if it were to sell the Property to a third-party buyer. Under U.S. federal income tax law, New York State income tax law, and New York City income tax law, C-corporations such as Inmoprisa may carry back a capital loss up to a maximum of three tax years. *See* Cedeño de Hoces Declaration at ¶ 13. As such, if Inmoprisa closes the sale of the Property *before* October 31, 2023, Inmoprisa would be able to carry back the capital loss that results from such sale to offset the capital gain recognized in the tax year ended October 31, 2020, thus obtaining refunds of the approximately $2,779,707 of taxes paid that year. *See* Cedeño de Hoces Declaration at ¶ 13. If, however, Inmoprisa closed a sale of the Property *after* October 31, 2023, even at a loss, Inmoprisa will not be able to carry back the loss to obtain a refund of the taxes paid with respect to the tax year ending on October 31, 2020, because the loss would be recognized, at the earliest, in the tax year ending October 31, 2024, and thus beyond the maximum 3-year period allowed for the carryback of a capital loss by a C-corporation under applicable tax law. *See* Cedeño de Hoces Declaration at ¶ 13. Because Inmoprisa is a holding company for the Property (it does not have any other activity or assets) and will be dissolved after the sale of the Property, Inmoprisa will have no income or gain in later tax years against which it could utilize a loss from the sale of the Property. *See* Cedeño de Hoces

Declaration at ¶ 13. In short, if Inmoprisa closes a sale of the Property *after* October 31, 2023, Inmoprisa will recognize a very sizable economic loss on its investment in the Property but will not be able to realize any tax relief from such loss, adding insult to injury. *See* Cedeño de Hoces Declaration at ¶ 13.

### D. Debtor's Failure to Close Under the Contract.

20. On April 9, 2023, (at approximately 6:15 PM Eastern Time) the Debtor notified Inmoprisa that closing would not occur on April 10, 2023, despite being reminded again that time was of the essence. *See* Cedeño de Hoces Declaration, Annex 2. The closing did not occur on April 10, 2023. *See* Cedeño de Hoces Declaration at ¶ 14.

21. Inmoprisa issued a notice of default to the Debtor on April 13, 2023, which triggered a five (5) business day cure period under the Contract.[3] *See* Cedeño de Hoces Declaration, Annex 3.

22. Only minutes before the expiration of the cure period, on April 20, 2023, the Debtor filed a petition for relief under chapter 11 of title 11 of the Bankruptcy Code "to invoke the provisions of 11 U.S.C. §108(b) and obtain a statutory extension of at least sixty (60) days to close under the Bankruptcy Code" [Dkt. No. 1]. Accordingly, the Debtor asserts the five (5) business day cure period under which the Debtor was obligated to close has been extended by sixty (60) days, pursuant to Section §108(b) of the Bankruptcy Code, to June 19, 2023. Specifically, Debtor's counsel stated that "Seller is stayed from entering into any other contract relating to the subject property or otherwise impeding the Debtor's [sic] purchase the property, or releasing the deposit absent an Order of the Bankruptcy Court." *See* Cedeño de Hoces Declaration, Annex 4.

---

[3] Inmoprisa informally offered to provide a few additional days after April 10, 2023 for the Debtor to close the transaction, but once it became clear that closing would not occur and that the Debtor wanted significant additional time to close, Inmoprisa issued the Notice of Default. *See* Cedeño de Hoces Declaration at ¶ 15.

7

23.     In its declaration in support of the petition (the "Debtor's Declaration"), the Debtor, while contending without any basis that the notice did not conform to the Contract, acknowledges that the notice of default was in fact issued (and that it received actual notice of default) and admits that the notice of default sent by Inmoprisa precipitated its filing. *See* Debtor's Declaration [Dkt. No. 1].[4],[5]

24.     Nonetheless, as a result of the Debtor's failure to close by April 10, 2023, Inmoprisa has incurred additional costs, which are expected to include $83,000 in real estate property taxes, $30,000 in building maintenance costs and $18,500 in legal fees through June 20, 2023. *See* Cedeño de Hoces Declaration at ¶ 17.

25.     On April 21, 2023, Inmoprisa sent a letter to the Escrow Agent directing the release of the Deposit, but, after being made aware of the Debtor's bankruptcy filing, retracted the letter. *See* Cedeño de Hoces Declaration at ¶ 18.

26.     To date, the Debtor has not filed any documents aside from its petition, its schedules and its statement of financial affairs. According to the Debtor's schedules, its only assets are the Property and the Deposit, and its only liabilities are the Contract purchase price and three unliquidated governmental claims. [Dkt. No. 11].[6] With no substantive materials from the Debtor to properly administer the case, on April 28, 2023, the Court entered an Order Scheduling an Initial

---

[4] The Debtor had actual notice of the default notice, thus any argument regarding non-conforming notice is irrelevant. *See In re Shank*, 569 B. R. 238, 251 (Bank. S. D. Tex. 2017) ("Actual notice is notice given directly to, or received personally by, a party."); *see also In re Caritas Health Care, Inc.*, 435 B.R. 111 (Bankr. E.D.N.Y. 2010) (finding that a party is considered to have notice of all facts, actual notice, when charged upon its attorney).

[5] "The purpose of this Declaration is to assist in understanding the exigent circumstances necessitating the filing of Chapter 11 petition to preserve rights under a contract to buy the Property in the face of a five (5) business day default notice issued by the Seller on April 13, 2023 for allegedly failing to close on April 10, 2023… While the Default Notice did not conform to the underlying contract and will be challenged in bankruptcy, the Debtor is proceeding with a Chapter 11 filing to maintain status quo for a period of at least sixty (60) days, if not longer." *See* Debtor's Declaration [Dkt. No. 1].

[6] Following the Debtor's bankruptcy filing, a notice of deficient filing was issued. [Dkt. No. 2]. While the Debtor's recently filed schedules cured some of the deficiencies, certain documents have not yet been filed.

8

Case Management Conference, "to aid in the efficient conduct and proper administration of the case". [Dkt. No. 8].

## ARGUMENT

### A. Inmoprisa is Authorized to Market the Property During the Pendency of the Debtor's Bankruptcy Case and to Sell the Property at the Conclusion of the 60-Day Period.

27. Inmoprisa and its agents should be permitted to market the Property. In addition to repeated failures by what are believed to be affiliates of the Debtor to close on the purchase of the Property during the 2018-2020 period, the Debtor has now materially breached the Contract this year by failing to close the transaction in a timely manner. Nor does the Contract itself prohibit the subsequent marketing or sale of the Property after the Debtor's material breach thereof. *See* Cedeño de Hoces Declaration, Annex 1.

28. Rather, under the terms of the Contract, time is of the essence for Inmoprisa: the inability to utilize the tax loss from the sale of the Property would result in Inmoprisa foregoing tax refunds of approximately $2,779,707. To avoid losing the opportunity to obtain such tax refunds, Inmoprisa must continue to search for a back-up purchaser of the Property, and be able to enter into a contract with a third-party that allows it to promptly close in the event the Debtor is unable to close the transaction at the end of the 60-Day Period.

29. Such relief should not implicate the automatic stay because the Property does not constitute property of the Debtor's estate, and the automatic stay only bars creditors from taking action against a debtor's property during the bankruptcy. *See* 11 U.S.C. § 362. Indeed, the Debtor failed to close on the purchase of the Property in breach of its contractual obligations, and therefore has no rights and remedies with respect to the Property outside of those granted by the Contract and the extension of time granted by section 108(b) of the Bankruptcy Code.

30. Nonetheless, out of an abundance of caution, to the extent the Court finds the automatic stay is implicated, Inmoprisa requests that the Court grant Inmoprisa relief from the stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit Inmoprisa and its agents to continue marketing the Property and to subsequently sell the Property.

31. Section 362(d)(1) provides that, after notice and hearing, the automatic stay may be modified if "cause" exists. Specifically, Section 362(d)(1) states, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. *See* 11 U.S.C. §362(d)(1).

32. The Court has wide discretion to grant relief from the automatic stay. *See In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). What constitutes "cause" under section 362(d)(1) justifying stay relief is not specifically defined by the Bankruptcy Code and is determined on a case-by-case basis. *See In re Balco Ltd.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004).

33. In the seminal case of *In re Sonnax Industries*, the United States Court of Appeals for the Second Circuit established a twelve-factor test to determine whether cause exists, pursuant to Section 362(d)(1) of the Bankruptcy Code. *See In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990). In determining whether to grant relief from the automatic stay, the Court must analyze the 12 Sonnax factors:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable

> subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

34. Nonetheless, "in a given case, not all of the factors will be relevant, and the court may disregard irrelevant factors." *In re Dana Corp.*, 2007 Bankr. LEXIS 3923 *10 (Bankr. S.D.N.Y. Nov. 6, 2007) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). "When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994) (citation omitted). Here, the most relevant factor would be the impact of the stay on the parties and the balance of harms.

35. If Inmoprisa is unable to market the Property during the 60-Day Period, and accordingly cannot find a back-up purchaser, it may not be able to close a sale of the Property before October of this year, thereby forfeiting the opportunity to obtain approximately $2,779,707 of tax refunds. As a result, it must continue to search for a back-up purchaser in the event the Debtor is unable to close the transaction yet again at the end of the 60-Day Period.

36. Without assurance that Inmoprisa can enter into an alternate contract, potential buyers may be deterred from engaging in negotiations with Inmoprisa until the conclusion of the Debtor's bankruptcy case, which would jeopardize Inmoprisa's ability to utilize the tax loss from the sale of the Property, thereby materially harming Inmoprisa. In addition, Inmoprisa is incurring significant additional cost by virtue of its continued ownership of the Property, including property taxes, maintenance expense and legal fees.

37. On the other hand, the Debtor will face little hardship if Inmoprisa continues to market the Property, as it will still enjoy the remaining time in the 60-Day Period to close the

transaction. Furthermore, as of the date of this Motion, the Debtor has not yet filed any substantive pleadings in the bankruptcy case or scheduled any hearings, demonstrating its intent to use the bankruptcy process simply to further delay closing rather than obtain typical bankruptcy relief.

### B. The Deposit Should be Released to Inmoprisa at the Conclusion of the 60-Day Period if the Debtor Has Not Closed by Such Time.

38. If the Debtor fails to close by the end of the 60-Day Period, the Escrow Agent should be authorized and directed to release the $3,000,000 Deposit to Inmoprisa.

39. The Contract provides that the Deposit is "deemed fully earned by [Inmoprisa] as of the date [of the Contract] as consideration for [Inmoprisa] entering into this Contract." *See* Cedeño de Hoces Declaration, Annex 1.

40. Further, Inmoprisa is entitled to the Deposit as liquidated damages pursuant to the Contract. Specifically, Section 21.1 of the Contract states:

> If, on or before the Closing Date, (i) **Buyer is in default of any of its obligations hereunder,** or (ii) any of Buyer's representations or warranties are, in the aggregate, untrue, inaccurate or incorrect in any material respect, or (iii) the **Closing otherwise fails to occur by reason of Buyer's failure or refusal to perform** its obligations hereunder *in a prompt and timely manner*, and any such circumstance described in any of <u>clauses (i)</u>, <u>(ii)</u>, or <u>(iii)</u> continues for five (5) business days after written notice from Seller to Buyer, which written notice shall detail such default, untruth or failure, as applicable, the Seller may elect to (a) terminate this Contract by written notice to Buyer, promptly after which the **Deposit shall be paid to Seller as liquidated damages** and, thereafter, the parties shall have no further rights or obligations hereunder except for obligations which expressly survive the termination of this Contract, or (b) waive the condition and proceed to Closing. (emphasis added). *See* Cedeño de Hoces Declaration, Annex 1.

41. Therefore, if the Debtor fails to close the transaction upon the conclusion of the 60-Day Period, the Deposit, as liquidated damages, should be immediately released to Inmoprisa.

42. In addition, the Deposit does not constitute property of the Debtor's estate. Section 541 of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of a debtor in the property as of the commencement of a bankruptcy case." *See* 11 U.S.C. § 541.

In order to determine the extent of the Debtor's interest in property held in escrow, the Court must look to applicable state law. *See In Royal Business School Inc.*, 157 B.R. 932, 940 (Bankr. E.D.N.Y. 1993).

43.   In *In re Royal Business School, Inc.*, the Court determined that under New York law, once property is placed beyond the possession and control of the grantor, the grantor only retains a contingent right to repossess that property if the conditions are not met. *Id.* Accordingly, the Court found that property in escrow was not a part of the debtor's estate as the agreed-upon conditions had been fulfilled. *Id* at 941-942.

44.   Here, under the terms of the Contract, the Deposit is deemed fully earned by Inmoprisa as of the date of contract execution as consideration for entering into the Contract. *See* Cedeño de Hoces Declaration, Annex 1. Under New York law, the Debtor no longer has a property interest in the Deposit held in escrow and as such, it is not property of the Debtor's estate. Accordingly, Inmoprisa requests that the Court authorize and direct the Escrow Agent to release the Deposit to Inmoprisa upon the conclusion of the 60-Day Period.

### C.   No Further Extensions of the 60-Day Period Should be Granted.

45.   Inmoprisa further requests that the Court deny any further extension of the 60-Day Period absent the prior written consent of Inmoprisa.

46.   Courts have granted a further extension of the 60-day period provided by section 108(b) only in certain "extraordinary circumstances." *See In re 210 Roebling, LLC*, 336 B.R. 172 (Bankr. E.D.N.Y. 2005) (holding that the extension provided by section 108(b) can be extended pursuant to section 105(a) in extraordinary circumstances); *see also In re 652 W. 160th LLC*, 330 B.R. 455, 465 (Bankr. S.D.N.Y. 2005) (noting that the right to regain title to property under section 108(b) might be extendable "in an appropriate case"); *In re Farmer*, 81 B.R. 857, 862 (Bankr. E.D. Pa. 1988) (noting that the debtor's allegations of erroneous conduct, including that the foreclosing

party did not provide proper notice, without substantiation were insufficient to extend the debtor's redemption period); *In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314 (Bankr. E.D.N.Y. 2002) (noting that the majority of courts have held that section 105(a) cannot be used to extend the time allotted in section 108(b) in the absence of some wrongdoing by the non-debtor party); *In re G-N Partners*, 48 B.R. 462 (Bankr. D. Minn. 1985) (noting that the right to extend the statutory redemption period should be exercised when presented with fraud, mistake, accident, or erroneous conduct by the non-debtor party).

47. While the Debtor has not yet requested an extension of the 60-Day Period, the Debtor notes that "the Debtor is now compelled to seek Chapter 11 relief to invoke the provisions of 11 U.S.C. §108(b) and obtain a statutory extension of *at least* sixty (60) days to close under the Bankruptcy Code," implying that it may ask for a further extension of the 60-Day Period. *See* Debtor's Declaration (emphasis added).

48. Here however, no extraordinary circumstances exist and no wrongdoing by Inmoprisa has occurred (or has even been alleged) that would even arguably warrant an extension of the statutorily imposed timeframe under section §108(b).

49. Inmoprisa must close a sale of the Property before October 31, 2023 to utilize the tax loss from the sale and obtain the corresponding tax refunds, and therefore it must have certainty about its ability to sell the Property to a back-up purchaser. If the 60-Day Period is extended, Inmoprisa's ability to market the Property will be harmed, jeopardizing its efforts to sell to an alternative buyer prior to the end of October. Any extension of the 60-Day Period would thus inflict material harm on Inmoprisa. Therefore, Inmoprisa preemptively requests the Court deny any request by the Debtor to extend the 60-Day Period.

## **RESERVATION OF RIGHTS**

50. Inmoprisa submits this Motion without prejudice and reserves all of its rights in all respects, including, without limitation, its right to supplement this Motion and/or to move for additional and further relief.

51. Inmoprisa further expressly reserves its right to assert that the Debtor did not commence its chapter 11 bankruptcy case in good faith and to seek additional damages against the Debtor or any other party.

[*Remainder of the Page Intentionally Left Blank*]

WHEREFORE, for the foregoing reasons, Inmoprisa respectfully requests the Court enter the proposed order annexed hereto as Exhibit A, and grant such other and further relief as the Court deems just and proper.

Dated:  May 5, 2023 **MAYER BROWN LLP**

/s/_____*Lucy F. Kweskin*_____
Brian Trust
Lucy F. Kweskin
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
           LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*