UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
In re:                                                                    Chapter 11

14 East 52nd Street Devco LLC,                                            Case No. 23-41364 (ESS)

                                           Debtor.
-----------------------------------------------------------------------x

### DEBTOR'S LIMITED OPPOSITION TO MOTION OF INMOPRISA, USA, INC. FOR RELIEF FROM THE AUTOMATIC STAY

The debtor herein, 14 East 52nd Street Devco LLC (the "Debtor"), as and for its limited opposition to the motion of Inmoprisa, USA, Inc. (the "Seller") for relief from the automatic stay in order to market the property and related relief, respectfully represents and shows this Court as follows:

**Background**

1. The Debtor is the would-be buyer of the subject real property located at 14 East 52nd Street, New York, New York (the "Property"). The Debtor commenced this Chapter 11 case on April 20, 2023 to preserve its rights to close under a Contract of Sale dated February 23, 2023 (the "APA") with the Seller. The APA provides for a purchase price of $22.5 million, including a deposit of $3 million (the "Deposit"), and a closing on April 10, 2023. As permitted under Sections 1.3 and 11 thereof, the APA was assigned to the Debtor which succeeded to all of the rights of the buyer thereunder.

2. The Debtor and its predecessor sought a voluntary extension of the closing date in order to complete institutional financing for the intended acquisition. The Seller refused to grant an extension. Instead, on April 13, 2023 (three days after the April 10, 2023 closing date) the Seller issued a purported five business days' notice of default (the "Purported Default Notice") pursuant to Section 21.1 of the APA, declaring the Debtor in default as of April 20, 2023.

1

3.    Significantly, for the purposes of this Chapter 11 case, the Debtor's failure to close on April 10, 2023 was <u>not</u> grounds for automatic termination of the APA.  The Seller was required to provide additional notice to the Debtor detailing the default and specifying the Seller's decision to terminate the APA pursuant to Section 21.1, which provides in relevant part:

> If, on or before the Closing Date, (i) Buyer is in default of any of its obligations hereunder, or (ii) any of Buyer's representations or warranties are, in the aggregate, untrue, inaccurate or incorrect in any material respect, or (iii) the Closing otherwise fails to occur by reason of Buyer's failure or refusal to perform its obligations hereunder in a prompt and timely manner, and any such circumstance described in any of clauses (i), (ii) or (iii) continues for five (5) business days after written notice from Seller to Buyer, which written notice shall detail such default, untruth or failure, as applicable, then Seller may elect to (a) terminate this Contract by written notice to Buyer, promptly after which the Deposit shall be paid to Seller as liquidated damages and, thereafter, the parties shall have no further rights or obligations hereunder except for obligations which expressly survive the termination of this Contract, or (b) waive the condition and proceed to Closing.

4.    The Debtor commenced this Chapter 11 case before the expiration of the five business day cure period on April 20, 2023.  Once in Chapter 11, the Debtor has now filed a formal adversary proceeding (23-01037) (the "<u>Adversary Proceeding</u>") seeking a Declaratory Judgment finding and declaring that, for the reasons set forth in the adversary complaint, the Purported Default Notice was ineffective both procedurally and substantively, due to the lack of complete notice as required by Section 12 of the APA and the failure to exercise a right of termination under Section 21.1.  Moreover, the Seller never actually convened a closing ceremony to make a conforming tender of all closing documents and other deliveries as required by Section 7.3 of the APA.  Thus, the Debtor was not properly put in default and its rights continue in bankruptcy.  A copy of the Debtor's adversary complaint with exhibits is annexed hereto as <u>Exhibit</u> "A" (the "<u>Complaint</u>").  All of the allegations and background information contained in the Adversary Proceeding are incorporated herein by reference.

5.  In turn, because the Purported Default Notice was ineffective pre-petition, the Debtor is not necessarily subject to a strict sixty (60) day deadline to close. This circumstance impacts the Seller's motion to the extent that it seeks to terminate the APA or forfeit the Deposit in the event that the Debtor does not close within sixty days. The Court should not grant such relief absent further proceedings in the context of the Adversary Proceeding in which the Debtor is seeking a further extension.

6.  In the interim, the Debtor does not object to the Seller marketing the Property (without an actual sale) as a means to mitigate any prejudice arising out of the Adversary Proceeding. However, the Seller should not be permitted to sell the Property without further Order of this Court, since at a minimum the Debtor's rights under the APA continue for at least sixty (60) days, and potentially longer, depending on the outcome of the Adversary Proceeding.

## Limited Opposition

7.  A significant portion of the Seller's motion is devoted to a one-sided historical assessment of the lead-up to the APA. Efforts to the sell the Property in 2018 and 2019 have no bearing on the APA signed in 2023. It suffices to say that by 2023, the Seller was comfortable enough to enter into another transaction with the Debtor's predecessor pursuant to the APA, which governs the Debtor's continued ability to close. Under the APA, the Seller was subject to a dual notice requirement (*i.e.*, service upon both the buyer and its attorneys) and the requirement that it specifically elect to terminate the APA. The Purported Default Notice fails on both accounts and must be deemed ineffective for purposes of bankruptcy.

8.  Nevertheless, as an indicia of its good faith, the Debtor does not oppose the Seller pursuing alternative marketing of the Property even before the end of the sixty (60) day period, even though the Seller cited no specific case law to support this request other than general

statements regarding cause under Section 362(d).  Seller's reference to *In re Sonnax Indus.*, 907 F.2d 1280 (2d Cir. 1990) plainly has no application here since the parties were not engaged in any pre-petition litigation and leave is not being sought to continue a pending state court litigation in which the Bankruptcy Court lacks jurisdiction.  Because the Debtor is cognizant of minimizing potential hardship to the Seller regarding its tax situation, the Debtor is agreeing to an interim measure to permit the marketing of the Property.  This is done without prejudice to the Debtor's remaining rights and remedies, and militates against any adverse tax consequences.

9. However, the balance of the Seller's motion must be denied.  The Seller's failure to provide a fully conforming notice of the Debtor's alleged default cannot be lightly excused or overlooked.  The cases cited by the Seller in footnote 4, *In re Shank*, 569 B. R. 238 (Bank. S. D. Tex. 2017) and *In re Caritas Health Care, Inc.*, 435 B.R. 111 (Bankr. E.D.N.Y. 2010), are readily distinguishable, as both are based on notice requirements under the Bankruptcy Code, and do not involve negotiated contract provisions for notice.  *Shank* involved a secured creditor who argued it was not bound to a confirmed Chapter 13 plan even though it had actual knowledge of the plan.  *Caritas Health Care* examined the *Pioneer* standard for excusable neglect where the creditor had actual knowledge of the bar date, since the notice went to its attorney even though it was mailed not directly to the creditor.

10. Both of these cases focused on whether due process was met by actual notice to counsel.  These cases are wholly inapplicable to a potential forfeiture of contractual rights where the parties expressly negotiated and agreed upon exacting notice provisions.  *See,* Sections 12 and 21.1. Under New York law, contracts are to be enforced according to the provisions negotiated by the parties.  *R/S Associates v. New York Job Development Authority*, 98 N.Y. 2d 29, 32 (2002) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as

4

a rule be enforced according to its terms."). Thus, notice provisions must be strictly construed. In *O'Brien & Gere, Inc. of N. Am. v. G.M. McCrossin, Inc.*, 148 A.D.3d 1804, 1805–06 (4th Dep't 2017), the Court found actual notice of an employee's termination given orally was insufficient when the contract contained specific provisions for written notice, holding:

> We also reject plaintiff's contention that it satisfied the notice requirements contained in section 19 by giving defendant oral notice that it intended to terminate the contract. "'Where a contract provides that a party must fulfill specific conditions precedent before it can terminate the agreement, those conditions are enforced as written and the party must comply with them'" (*Summit Dev. Corp. v. Fownes,* 74 A.D.3d 563, 563, 903 N.Y.S.2d 33).

*See also, First Nat. Bank of Chicago v. Ackerley Commc'ns, Inc.*, 2001 WL 15693, at *4 (S.D.N.Y. Jan. 8, 2001), *aff'd,* 28 F. App'x 61 (2d Cir. 2002) (finding that a facsimile notice was insufficient in light of contract provisions requiring hand delivery or overnight delivery, holding "It is hornbook law that when the terms of a written contract are clear and unambiguous and those terms require written notification in a particular manner then such notification can be given only in that manner. *See* 22 N.Y. Jur Contracts § 214"); *Milltown Park v. American Felt & Filter Co.*, 180 A.D.2d 235 (3rd Dep't 1992) (enforcing notice requirements under a lease); *Chumley's Bar & Rest. Corp. v. Bedford Ct. Assocs.*, 174 A.D.2d 398 (1st Dept 1991) (rejecting purported termination sent on less than required 5 days' notice); *Hendrickson v. Lexington Oil Co.*, 41 A.D.2d 672 (2d Dep't 1973) (rejecting contract termination where the required registered mail notice was never sent).

11. Hence, the validity of the Purported Default Notice cannot be assumed and is now being challenged by the Debtor in the context of the Adversary Proceeding. Pending resolution of the Adversary Proceeding, there can be no termination of the APA unless and until there is a

determination that the Purported Default Notice complied with the APA. In the meantime, the Debtor's rights continue unabated.[1]

12. The Adversary Proceeding also prevents an automatic forfeiture of the Deposit. Since the Debtor commenced this Chapter 11 case before the Purported Default Notice expired on April 20, 2023, the Debtor's right to apply the Deposit toward the purchase price remains intact.

13. Indeed, pursuant to the escrow provisions in Article 10 of the APA, the release of the Deposit is subject to a well-defined set of protocols which have not yet been triggered. First, under Section 10.3, the Seller must make a separate demand upon the Escrow Agent for release of the Deposit, whereupon the Escrow Agent is then required to provide the Debtor with a separate notice. Even then, the Escrow Agent can only release the Deposit if no written objection is filed within ten (10) days by the Debtor. Once an objection is filed, the Deposit must remain in place until entitlement is finally decided by a Court of competent jurisdiction.

14. As the parties are presently situated, the Adversary Proceeding constitutes the Debtor's objection to release of the Deposit and the vehicle to decide the parties' rights thereto. Thus, the Deposit must remain in place until the Adversary Proceeding is concluded, particularly since the Seller never made a pre-petition demand upon the Escrow Agent for release of the Deposit.

15. The Seller's reference to the case of *In re Royal Business School*, 157 B.R. 932 (Bankr. E.D.N.Y. 1993) is equally misplaced. *Royal Business School* involved a terminated license agreement in which there was no mechanism to address disputes over entitlement to certain escrowed funds, and not a real estate contract subject to a disputed pre-petition default notice. The

---

[1] The Debtor reserves the right to seek an extension under 11 U.S.C. §105 based upon the fact that the Seller is proceeding under a procedurally and substantively deficient notice.

provisions of Section 10.3 of the APA control here and preserve the Debtor's rights with respect to the Deposit.

16.     Finally, the Seller makes no effort (i) to explain its failure to convene a closing ceremony on Aril 13, 2023; or (ii) excuse its failure to make a formal tender of all documents, deliveries and transfer taxes as required by the APA. It is well-settled that before declaring a default and terminating the APA, the Seller is required to demonstrate that it was ready, willing and able to perform, which must be proven. *See*, *Gargano v. Rubin*, 200 A.D.2d 554, 555 (2d Dep't 1994) ("It is axiomatic that a seller cannot place a purchaser in default without first tendering his or her own performance. Where, as here, a real estate contract states that the seller shall tender title at closing that a reputable title company will insure, the burden of producing insurable title has been construed as a condition precedent to the seller holding the purchaser in default."); *see, also Hudson-Port Ewen Associates, L.P. v. Kuo*, 78 N.Y.2d 944 (1991) ("[T]he contract in this case, read as a whole, establishes that it was [seller's] duty to convey both an insurable title and title which was free from all encumbrances … As there is no dispute that the title was subject to two unspecified encumbrances, [purchaser] was not required to perform under the contract and summary judgment was properly granted for purchaser on its cause of action seeking return of its deposit."); *Nowak v. Rametta*, 43 A.D.3d 1120 (2d Dep't 2007) ("[S]ince the defendants were unable to convey marketable title to the plaintiffs in accordance with the contract provisions on the final day set by the defendants for the closing, the plaintiffs were entitled to the return of their down payment [despite not being ready, willing and able to perform themselves]."); *101123 LLC v. Solis Realty LLC,* 23 A.D.3d 107, 111 (1st Dep't 2005) (explaining that *S.E.S. Importers, Inc. v. Pappalardo*, 53 N.Y.2d 455 (1981) requires a seller to tender its defective title and demand closing under the limitation of remedies clause before the purchaser may be held to elect its

remedies); *1776 Associates Corp. v. Broadway West 57th Street Associates*, 181 A.D.2d 601 (1st Dep't 1992) ("as a matter of law, no default is established unless the seller makes a tender of performance at a closing"); *see also In re Barbieri*, 2009 WL 5216963, at *9 (Bankr. E.D.N.Y. Dec. 29, 2009) "a finding of repudiation against the purchaser is premised upon the seller first showing that it had attempted to convey marketable title to the purchaser in good faith but was unable to do so"). Indeed, this rule has been in place for more than one hundred and seventy years. *Lester v. Jewett*, 11 N.Y. 453 (1854) ("It follows then that where there is a contract to purchase, like the one in question, the vendor is not entitled to recover for a breach of it, until he has made a tender of performance on his part. If it were otherwise, the defendant would be compelled to pay for what he has never received …").

17. The Adversary Proceeding also challenges the Seller's failure to make a tender and provides a ready forum for a determination of Seller's lack of compliance with its own closing obligations under the APA.

WHEREFORE, for all of the reasons set forth herein, the relief granted to the Seller should be limited only to the right to market the Property without any authority to resell the Property until the Adversary Proceeding is decided.

Dated: New York, NY
May 18, 2023

        Goldberg Weprin Finkel Goldstein LLP
        Attorneys for the Plaintiff/Debtor
        125 Park Avenue, 12th Floor
        New York, NY 10017
        (212) 221-5700

        By:   /s/ Kevin J. Nash, Esq.