Brian Trust
Lucy F. Kweskin
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
          LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 14 East 52nd Street Devco LLC, | ) Case No. 1-23-41364 (ESS) |
| | ) |
| Debtor. | ) |
| | ) |

**INMOPRISA'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ENTRY OF ORDER PERMITTING INMOPRISA TO MARKET THE PROPERTY AND GRANTING RELATED RELIEF**

Inmoprisa USA, Inc., ("Inmoprisa"), by and through its undersigned counsel, Mayer Brown LLP, hereby submits this reply (the "Reply") to the *Debtor's Limited Opposition to Motion of Inmoprisa USA, Inc. for Relief from the Automatic Stay* [Docket No. 18] (the "Objection") and in further support of its *Motion for Entry of an Order Permitting Inmoprisa to Market the Property and Granting Related Relief* [Docket No. 13] (the "Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1.  The Debtor's sole objective has been to delay a closing of the sale of the Property. After failing to close on April 10, 2023, as required by the Contract, the Debtor sought an informal extension of the time to close, but again failed to close. Faced with the expiration of the five-day default cure notice period and impending termination of the Contract, the Debtor then filed for bankruptcy, availing itself of the 60-day extension granted under section 108(b) of the Bankruptcy Code ("Section 108(b)"). Now nearing the conclusion of that 60-day period, the Debtor has filed an adversary proceeding and complaint, which makes no mention of Section 108(b) and instead asserts that the Debtor should have an additional four months to close on the sale of the Property. However, the Debtor's failure to close by the contractually required date, combined with the Contract's "time is of the essence" provision, constitutes a material pre-petition breach of the Contract, which renders it incapable of assumption under section 365 of the Bankruptcy Code ("Section 365").

2.  Desperate to extend the time for closing and without any prospects for actually being able to close, the Debtor is grasping at straws, alleging the following meritless, absurd and ultimately irrelevant arguments: (i) that the notice of default (the "Default Notice") under the Contract was inadequate, even though the Debtor clearly had actual notice of its default and filed for bankruptcy on the eve of expiration of the five-day cure period set forth in the Default Notice, (ii) that Inmoprisa failed to convene a closing ceremony despite the Debtor's prior disclosure that it would not be closing on the Closing Date, and (iii) that Inmoprisa should have paid the transfer taxes on the sale before it had received the sale proceeds from the purchaser.

3.  The current situation is untenable. Inmoprisa has respected the 60-day period set forth in Section 108(b) but with no prospects or possibility for the Debtor to close, it is time

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning set forth in the Motion.

for the Debtor "to fish or cut bait." If the Debtor cannot close by June 19, 2023, the conclusion of the 60-day period, and a full 70 days after the stated closing date in the Contract, then Inmoprisa must be able to sell the Property to a third party and the $3 million Deposit must be finally released to Inmoprisa.

## ARGUMENT[2]

**A. The Debtor Cannot Assume the Contract Under Section 365**

4.  Now that the 60-day period under Section 108 is close to expiring, the Debtor attempts to argue that Section 365 provides the Debtor with an almost unlimited time to assume the Contract *i.e.*, until confirmation of a chapter 11 plan. *See* Adversary Complaint for Declaratory Judgment Finding and Declaring That (i) The Defendant/Seller's Notice of Default is Ineffecitve to Terminate the APA; and (ii) The Defendant/ Seller Did Not Make A Conforming Tender (the "Complaint") at ¶ 29 [Docket No. 18]. However, the case law is clear that a contract cannot be assumed if there has been an incurable material breach of the contract. *See In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002); *In re Empire Equities Cap. Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y 2009). Here, the Debtor's failure to close by April 10, 2023, constitutes an incurable breach of the Contract, precluding the Debtor's assumption thereof.

5.  The present case closely tracks cases from Bankruptcy Courts in the Eastern and Southern District of New York holding that a debtor's failure to timely perform constitutes a material breach of contract, rendering the contract incapable of cure, and thus incapable of assumption under Section 365. In both *In re New Breed Realty Enterprises, Inc.* and *In re Empire Equities Capital Corp*., the debtor entered into a contract with a "time is of the essence" clause, but after defaulting (in one instance on the Closing Date and in another on the date an

---

[2] The supplemental facts contained herein are set forth in the supplemental declaration of Gloria Cedeño de Hoces (the "Supplemental Declaration"), attached hereto as Exhibit A, and made a part thereof.

additional deposit was due), the debtor filed for bankruptcy to avail itself of the 60-day extension provided by Section 108(b). *See In re New Breed Realty Enterprises, Inc.*, 278 B.R. at 316-17; *In re Empire Equities*, 405 B.R. at 689.

6. In both cases, the debtor also sought additional time to assume the contract under Section 365. In both cases, the courts would not allow assumption finding that "[c]ases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract.…The debtor's failure to close the sale on or before the time of the essence closing date, including any extension of that date provided by § 108(b)'s statutory grace period, constitutes a non-monetary default which cannot be cured because it is a historical fact." *In re New Breed*, 278 B.R. at 320, 322; *see also Empire Equities*, 405 B.R. at 690 ("There is substantial authority holding that § 365 is unavailable to a debtor in a case… where the passage of a time-of-the-essence deadline, which is a material default under applicable New York law, in effect terminates the contract…. the Bankruptcy Code… makes it clear that § 365 provides no recourse to [the] Debtor because its default under the contract cannot be cured and, accordingly, the contract cannot be assumed.").

7. Here, as in *In re New Breed Realty Enterprises* and *In re Empire Equities Capital Corp.*, the Contract contains a specifically bargained-for "time is of the essence clause." Therefore, the Debtor's failure to close by April 10, 2023 triggered a material default—incapable of cure. As such, the Contract is rendered non-executory and cannot be assumed. Accordingly, once the 60-day period under Section 108(b) has expired, the Debtor will be left with no further recourse.

**B. The Debtor Is Not Entitled to an Extension of the 60-Day Period**

8. Given the Debtor's inability to assume the Contract under Section 365, it must close on the sale of the Property by June 19, 2023, the time set forth by Section 108(b). Any

further extension of time beyond that date would be both inappropriate and unwarranted. "The majority of courts that have considered this issue have concluded that the court cannot utilize its powers under §105(a) to extend the cure period, at least in the absence of some wrongdoing by the nondebtor party… Section 108(b) specifically addresses the duration of any extension of the debtor's right to cure a default under applicable non-bankruptcy law. Section 105(a) cannot, therefore, be used to frustrate Congress's unambiguous intent to establish an extension of no more than sixty days." *In re New Breed Realty*, 278 B.R. at 318, quoting *Geron v. Valery Realty Co., Inc. (In re Hudson Transfer Group, Inc.),* 245 B.R. 456, 459-60 (Bankr. S.D.N.Y. 2000); *see also In re 210 Roebling, LLC*, 336 B.R. 172, 176 (Bankr. E.D.N.Y. 2005) ("Thus, while a bankruptcy court's equitable powers under § 105(a) may be broad, they cannot be invoked to alter substantive rights under nonbankruptcy law, absent exceptional circumstances….Upon the filing of a bankruptcy petition, § 108(b) fixes the time within which a debtor can cure a default under applicable non-bankruptcy law. This court takes note that although numerous other provisions of the Bankruptcy Code provide for extensions of time for cause, § 108(b) provides no option."). Even where courts have found Section 108(b) to be subject to extension, such extension is only appropriate under "exceptional circumstances." *See* Transcript of Adjourned Case Status Conference at 43, *In re 2178 Atlantic Ave HDFC*, Case No. 19-47287, (Bankr. E.D.N.Y. Feb. 24, 2020)(Docket No. 85). Here, the Debtor has failed to seek an extension of Section 108(b), and has not proffered any reason, exceptional or not, for a further extension thereunder. Inmoprisa has acted in good faith, and there has been no fraud, mistake, or accident by Inmoprisa that would serve as a basis to further extend the June 19, 2023 deadline for the Debtor to close on the Property.

9. On the other hand, the Debtor has been unjustifiably delaying for a period spanning five years. While the Debtor attempts to oversimplify and re-write the parties' history, reducing a multi-year saga of delay and obstruction to a simple statement that "the

Debtor needed an extension and Inmoprisa refused," the Debtor omits the multitude of prior occasions when Inmoprisa did in fact grant an extension of the Closing Date only to be frustrated on every occasion. In fact, as demonstrated in the Motion, Inmoprisa granted at least five extensions to closing—from 2018 to April 2023—to the Debtor and its affiliates, including recently providing a few additional days after being advised by the Debtor that it would not close on the most recent contractually mandated Closing Date of April 10, 2023. *See* Motion at ¶¶ 9-18.

10. Significantly, and despite the current 60-day extension under Section 108(b), the Debtor has shown no interest or ability in closing now or at any time in the near future, and has failed to justify any further extension. As Inmoprisa now approaches a critical tax deadline, it cannot afford yet another delay in the sale of the Property. The Debtor should also not be rewarded for dragging its feet.

11. Furthermore, the Debtor has shown no intention to utilize bankruptcy relief to reorganize its business affairs. The Debtor admitted seeking "Chapter 11 relief to invoke the provisions of 11 U.S.C. § 108(b)," and has not filed any substantive pleadings since the Petition Date. *See* Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-4 ¶ 7, Apr. 20, 2023, [Docket No. 1].

12. Simply put, the present case constitutes a two-party contractual dispute between the Debtor and Inmoprisa, and the Debtor is merely using this Court to further delay a potential closing of the sale of the Property. Such actions contravene the spirit of the Bankruptcy Code. *See Lippman v. Big Six Towers, Inc.*, 2021 WL 1784312 at *4 (E.D.N.Y. May 5, 2021) (finding that cause exists under § 1112(b) to dismiss a bankruptcy when the debtor's bankruptcy case no longer serves a proper bankruptcy purpose and is instead nothing more than a non-bankruptcy, two-party dispute); *see also In re GEL, LLC*, 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012) (stating a bankruptcy court "will not countenance a 'desperate legal stratagem in a two-

party dispute designed to delay and obstruct' a creditor under the guise of a chapter 11 bankruptcy filing"); *see also In re The Bridge to Life, Inc.*, 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005) ("The adoption of the good faith Chapter 11 requirements in bankruptcy jurisprudence is hardly surprising… There can be no question that [the Debtor's] case was not driven by a legitimate reorganization purpose, but for strategic reasons to obtain a perceived litigation advantage in a two-party dispute.").

13.     Ultimately, the Debtor has not shown any reason to further extend the 60-day period under Section 108(b), and Inmoprisa must be able to sell the Property immediately upon the conclusion of the 60-day period.

**C.  The Deposit Should Be Released to Inmoprisa on Day 61**

14.     The Debtor falsely argues that the Deposit has somehow not yet been earned by Inmoprisa. *See* Objection at ¶¶ 12-14. However, as demonstrated in the Motion, the Contract provides that the Deposit is "deemed fully earned by [Inmoprisa] as of the date [of the Contract] as consideration for [Inmoprisa] entering into this Contract." *See* Motion, Ex. B, Annex 1. Therefore, the Deposit was earned by Inmoprisa upon execution of the Contract. The Debtor's citation to Section 10.3 of the Contract is misplaced, as that section governs the Escrow Agent and Escrowee.

15.     Moreover, as further explained in the Motion, Inmoprisa is entitled to the Deposit as liquidated damages pursuant to the Contract, which states:

> If, on or before the Closing Date, (i) **Buyer is in default of any of its obligations hereunder,** or (ii) any of Buyer's representations or warranties are, in the aggregate, untrue, inaccurate or incorrect in any material respect, or (iii) the **Closing otherwise fails to occur by reason of Buyer's failure or refusal to perform** its obligations hereunder *in a prompt and timely manner*, and any such circumstance described in any of clauses (i), (ii), or (iii) continues for five (5) business days after written notice from Seller to Buyer, which written notice shall detail such default, untruth or failure, as applicable, the Seller may elect to (a) terminate this Contract by written notice to Buyer, promptly after which the **Deposit shall be paid to Seller as liquidated damages** and, thereafter, the parties shall have no further rights or obligations hereunder except for obligations which expressly survive the termination of this Contract, or (b)

waive the condition and proceed to Closing. (Emphasis added). *See* Motion, Ex. B, Annex 1 [Docket No. 13-3].

16. Accordingly, Inmoprisa has earned the Deposit, which must be released to Inmoprisa upon the Debtor's failure to close on or prior to the expiration of the 60-day period.

**D. The Debtor's Allegations Are Both Untrue and Irrelevant**

*The Contract Is Unambiguous*

17. The Debtor attempts to negate the bargained-for and agreed-upon "time is of the essence" provision in the Contract by intimating that the Closing Date was not intended to be on a specific date simply because it states that the Closing Date is "[o]n or about April 10, 2023." *See* Objection at ¶ 11. This contention is factually implausible, as the definition of "Closing" in Section 1.3 of the Contract states, in bold:

> "**Closing**" shall mean the consummation of the transaction referred to in this Contract…. **Time shall be of the essence with respect to the obligation of the Buyer to purchase the [Property] on the Closing Date.** *See* Motion, Ex. B, Annex 1 (Docket No. 13-3).

18. The Debtor's claim that the closing timeline was ambiguous is also a blatant mischaracterization of the record, as its counsel specifically acknowledged by email to Inmoprisa's counsel on April 5, 2023, that "this matter needs to close on April 10th, which is the clear contract closing date." *See* Supplemental Declaration, Annex 4.

19. Additionally, the Debtor ignores the plain definitional language that states that the "Closing shall occur on or about April 10, 2023, provided in no event shall such date be later than 45 days following signing of this Contract," the Contract was executed on February 23, 2023, thus 45 days thereafter is April 9, 2023. *See* Motion, Ex. B, Annex 1.

20. In addition to the Contract itself stating that "time was of the essence," the Debtor clearly knew that "time was of the essence" because Inmoprisa repeatedly stressed this fact on multiple occasions, via email to the Debtor's counsel: (i) on April 5, 2023, Inmoprisa wrote "my client has agreed to close on [April] 10th, *time being of the essence*" (emphasis

added); and (ii) on April 9, 2023, Inmoprisa wrote "[A]re you aware *that time is of the essence* and that failure to close is a material default under the contract of sale?" (emphasis added)." *See* Supplemental Declaration at Annexes 1, 2. Mr. Macklowe also confirmed by email to his counsel, Stewart Wolf, and others on February 23, 2023 that he had "agreed to reduce the contract time to 45 days toe," with "toe" standing for time being of the essence. *See* Supplemental Declaration at Annex 3.

21. Even if the Contract provided *some* latitude on timing, which it does not, the Debtor fails to adequately explain why the closing should be extended another five months to October, long after expiration of the 60-day period afforded by Section 108(b).

*Notice Was Sufficient*

22. In a transparent attempt to exalt form over substance, the Debtor contends that the Default Notice is somehow inadequate because it was delivered to the Debtor's attorney only and not to both the Debtor's attorney and the Debtor. This, however, does not excuse the Debtor's longstanding breach of the Contract. The Debtor was clearly aware that it did not close on April 10, 2023 and its counsel received the Default Notice, which it relayed to the Debtor.

23. Moreover, as a practical matter, service of the Default Notice upon Debtor's counsel was the only possible means of service at the time of the Debtor's default because, following the assignment of the Contract to the Debtor, no assignee notice information had been provided to Inmoprisa, thus, it was not possible to serve the Default Notice on the Debtor. *See* Supplemental Declaration, Annex 5. The only location to which Inmoprisa could send the Default Notice was to the Debtor's counsel, with whom it had been corresponding.

24. Further, it is well established that a party not directly served with a pleading is deemed to have received actual notice of that pleading when served on that party's counsel. *See In re Caritas Health Care, Inc.*, 435 B.R. 111, 115 (Bankr. E.D.N.Y. 2010) (finding that a

party is considered to have notice of all facts when charged upon the attorney); *see also In re The Brooklyn Hospital Center*, 513 B.R. 810, 820 (Bankr. E.D.N.Y. 2014) (finding that service of notice to an attorney to a creditor may constitute "notice" to that creditor).

25. Ultimately, regardless of method, the Debtor clearly had *actual notice* of its default and of Inmoprisa's planned termination of the Contract. In its bankruptcy petition, the Debtor admits that the Default Notice precipitated its bankruptcy petition. Therefore, it is quite clear that the Debtor had actual notice of Inmoprisa's intent to terminate the Contract. *See RKI Constr., LLC v. WDF Inc.*, 2017 WL 1232441 at *6 (E.D.N.Y. April 3, 2017) (citing *Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509-10 (S.D.N.Y. 2015) (finding compliance with contractual notice provision where defendants received actual notice and were not in any way prejudiced by technical deviation)).

26. It is indisputable that actual notice was timely received by the Debtor, but even if it were not, it would not change the fact that the Debtor is in material breach of the Contract; as such, the Contract cannot be assumed under Section 365. In fact, if no notice had been given, Section 108 might not apply at all, leaving the Debtor without any recourse to close.

*Inmoprisa Was Ready, Willing, and Able to Close the Transaction*

27. In addition, the Debtor's allegations that Inmoprisa was not "ready, willing and able" to close the transaction (*see* Objection at ¶ 16, Complaint at ¶ 21) is simply false. Inmoprisa was "ready, willing and able" to close when it was alerted by the Debtor that it would once again not be ready to close by April 10, 2023.

28. Specifically, on April 5, 2023, Inmoprisa's counsel contacted First Nationwide Title Company ("First Nationwide") to coordinate the signing of all the requisite closing documents. *See* Supplemental Declaration, Annex 6. The following day, Inmoprisa's counsel provided to First Nationwide a set of the Seller's Closing Documents (including the applicable title documents) to be held in escrow. *See* Supplemental Declaration, Annex 6. However, on

April 9, 2023, the Debtor indicated it would not close on April 10, 2023. *See* Supplemental Declaration, Annex 7. On April 11, 2023, Inmoprisa's counsel requested that First Nationwide hold all the seller closing documents, in the hope the transaction would still close. *See* Supplemental Declaration, Annex 8. It was not until *after* the Debtor had indicated it would be unable to close on the terms set forth in the Contract that Inmoprisa directed the return of the applicable documents. *See* Supplemental Declaration, Annex 8. The Debtor never sought to close on April 13, 2023, rendering its assertion that Inmoprisa failed to convene a closing ceremony utterly ridiculous. Inmoprisa remains ready, willing, and able to close the transaction, and it is clear that even with the additional 60 days, the Debtor has no ability to do so.

*Inmoprisa Was Not Required to Pay the Transfer Tax Before the Closing*

29. Lastly, the Debtor argues that Inmoprisa was unprepared to close the transaction because it had not furnished funds to pay the transfer tax that it assumed under Section 8.2 of the Contract. *See* Complaint at ¶ 21. However, as is customary in real estate transactions, the transfer tax was to be paid from funds received by the Debtor as part of the Debtor's tender of the purchase price, which was set forth in the settlement statement for the transaction. *See* Supplemental Declaration, Annex 9. The Debtor's argument that Inmoprisa should have paid the transfer tax *before* the Debtor closed and paid the purchase price is simply nonsensical.

## RESERVATION OF RIGHTS

30. Inmoprisa submits this Reply without prejudice and reserves all of its rights in all respects, including, without limitation, its right to supplement this Reply and the Motion and/or to move for additional and further relief.

31. Inmoprisa further expressly reserves its right to assert that the Debtor did not commence its chapter 11 bankruptcy case in good faith, and to seek additional damages against the Debtor or any other party.

## **CONCLUSION**

32. For the foregoing reasons, Inmoprisa respectfully requests that the Court (i) overrule the Objection, (ii) grant the Motion, and (iii) grant such other relief as the Court may deem just and proper.

Dated:  May 22, 2023                                        **MAYER BROWN LLP**

/s/_____*Lucy F. Kweskin*_____
Brian Trust
Lucy F. Kweskin
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506 2500
Email: BTrust@mayerbrown.com
           LKweskin@mayerbrown.com

*Counsel to Inmoprisa USA, Inc.*